## HEYDEMANN et al. v. WESTINGHOUSE ELECTRIC MFG. CO.

### No. 64.

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1936.

Boskey, Schiller & Serling, of New York City (Charles C. Pearce, of New York City, of counsel), for plaintiffs-appellants.

Cravath, deGersdorff, Swaine & Wood, of New York City (Hugh A. Fulton, of

838

New York City, of counsel), for defendant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal is from a judgment dismissing the amended complaint upon a motion by the defendant for judgment on the pleadings. The amended complaint alleged that the plaintiff Natalie G. Heydemann, as successor in interest of her deceased husband, was the owner of a cause of action against Russian Electric Company, a Russian corporation, to recover the sum of $79,251.09 for services and disbursements. Heydemann, and his widow were at all times domiciled in Germany and it was not alleged that the Russian Company was at any time engaged in business in the state of New York. Natalie G. Heydemann brought action against the Russian Company in the New York Supreme Court to recover $79,251.09 and interest. The action was commenced by an attachment levied by the sheriff of New York county upon a debt alleged to have been due to the Russian Company from the defendant, Westinghouse Electric Manufacturing Company, a Pennsylvania corporation which was engaged in business in New York. Service upon the Russian Company was obtained by publication. The Russian Company did not appear or answer, and judgment was entered against it for the amount of the claim and interest aggregating $130,372.32.

The sheriff of New York county attempted to levy an execution upon the debt of the Westinghouse Company to the Russian Company, but the Westinghouse Company, though said to have credits in its account with the Russian Company aggregating $88,320.94, refused to make payment to the sheriff. Thereupon Mrs. Heydemann and the sheriff (pursuant to sections 922 and 943 of the New York Civil Practice Act) brought the present action against the Westinghouse Company in the New York Supreme Court in aid of the attachment and execution issued in the original action against the Russian Company, and sought to recover the sum of $88,320.94 alleged to be due it from the Westinghouse Company. Westinghouse removed the action to the United States District Court and made a motion therein for judgment on the pleadings. That motion was granted by Judge Patterson on the ground that jurisdiction in the original action by Mrs. Heydemann against the Russian Company was dependent upon the validity of the attachment of its claim against the Westinghouse Company, and under the New York law the debt of a foreign corporation to a foreign corporation was not subject to attachment in the New York courts.

It is to be observed at the outset that the judgment against the Russian Company was not in personam but in rem, and consequently was only against such assets as were properly attached. The property sought to be attached was a cause of action by the Russian Company against the Westinghouse Company, a foreign corporation, which, though engaged in business in New York, was organized under the laws of Pennsylvania. The New York courts have long held that such an attachment is not valid where the debt attached did not arise and was not payable here. National Broadway Bank v. Sampson, 179 N.Y. 213, 71 N.E. 766, 66 L.R.A. 606, 103 Am.St.Rep. 851. Cf. Plimpton v. Bigelow, 93 N.Y. 592. But it is contended that the rigor of these decisions was relaxed by the New York Court of Appeals in Morgan v. Mutual Benefit Life Ins. Co., 189 N.Y. 447, 82 N.E. 438. That was an action by a resident of New York who had advanced money to the owner of a policy issued by a New Jersey life insurance company licensed to do an insurance business in New York. The policy was issued in New York to a resident therein and always remained there. He assigned it to the plaintiff to secure the advances. After the death of the insured, the plaintiff, who was in possession of the policy, sued to impress it with an equitable lien to the amount of the advances, and brought in nonresident beneficiaries by service of the summons by publication. There can be no doubt that the policy was property within the state of New York in which the plaintiff, through the assignment, had an interest, and that he could establish that interest against the beneficiaries, and so the New York Court of Appeals held. But it did not in any way depart from the rule laid down in National Broadway Bank v. Sampson, 179 N.Y. 213, 71 N.E. 766, 66 L.R.A. 606, 103 Am.St.Rep. 851, and the prior decisions which we have referred to. An action by a resident of a state to enforce a special property in an insurance policy (held therein), which is brought

against the company issuing the policy and licensed to write insurance within the state, is far different from an action to enforce an attachment levied upon a debt owing to a foreign corporation by a company doing business here, but organized in another state, where the debt did not arise here.

It is argued that recent decisions in the Appellate Division of the New York Supreme Court (First Department) bear out plaintiffs' claim that the attachment was valid, and in this connection Mechanics & Metals Nat. Bank v. Banque Industrielle de Chine, 205 App.Div. 543, 199 N.Y.S. 817, is particularly relied on. That was a suit to enforce an attachment levied by a New York bank upon a claim of a Cuban bank against Banque Industrielle de Chine. Both the Cuban bank and Banque Industrielle were corporations foreign to the state of New York, but the claim represented an indebtedness incurred by Banque Industrielle while doing business in New York under a license issued by the superintendent of banks. The attachment was upheld on the ground that the debt had arisen in New York and was incurred by the debtor when engaged in doing business there. To the same effect were the decisions in Lancaster v. Spotswood, 41 Misc. 19, 83 N.Y.S. 572, affirmed 86 App.Div. 627, 83 N.Y.S. 1109; India Rubber Co. v. Katz, 65 App.Div. 349, 72 N.Y.S. 658, and Flynn v. White, 122 App. Div. 780, 107 N.Y.S. 860. In the case at bar there is no showing that the indebtedness of Westinghouse Company to the Russian Company arose in the state of New York or was made payable there. But the Appellate Division (First Department) has not departed from the rule laid down in National Broadway Bank v. Sampson, 179 N.Y. 213, 71 N.E. 766, 66 L.R.A. 606, 103 Am.St.Rep. 851. This is evident from the opinions in Dos Passos v. Morton, 218 App.Div. 154, 218 N.Y.S. 17, and Cohn v. Enterprise Distributing Corporation, 214 App.Div. 238, 212 N.Y.S. 39, in which Justice McAvoy, who wrote the opinion in Mechanics & Metals Nat. Bank v. Banque Industrielle de Chine, 205 App.Div. 543, 199 N.Y.S. 817, concurred. The Dos Passos and Cohn decisions followed Bridges v. Wade, 113 App.Div. 350, 99 N.Y.S. 126, and expressly adhered to National Broadway Bank v. Sampson, 179 N.Y. 213, 71 N.E. 766, 66 L.R.A. 606, 103 Am.St.Rep. 851. In National Broadway Bank v. Sampson, Dos Passos v. Morton, Cohn v. Enterprise Distributing Corporation, and Bridges v. Wade, supra, the debt due from the nonresident defendant did not arise in connection with business done within the state of New York, nor was it made payable there. The dictum in the per curiam opinion in Gerard Investing Co., Inc., v. National Rys. of Mexico, 243 App.Div. 294, 276 N.Y.S. 1002, if inconsistent with the last three cases, must be regarded as inadvertent. Consequently there is no reason to suppose that the debt of Westinghouse Company could not be garnished if it arose out of the business done by that corporation in New York or was payable in that state. Not only do the decisions in Mechanics & Metals Nat. Bank v. Banque Industrielle de Chine, 205 App.Div. 543, 199 N.Y.S. 817, Lancaster v. Spotswood, 41 Misc. 19, 83 N.Y.S. 572, affirmed 86 App.Div. 627, 83 N.Y.S. 1109, India Rubber Co. v. Katz, 65 App.Div. 349, 72 N.Y.S. 658, and Flynn v. White, 122 App.Div. 780, 107 N.Y.S. 860, directly support the attachment of debts due from a nonresident corporation if they have arisen in connection with business done within the state, but the language of Judge Cardozo in Severnoe Securities Corporation v. London & Lancashire Ins. Co., 255 N.Y. 120, 174 N.E. 299, seems to justify that view. At page 123 of 255 N.Y., 174 N.E. 299, 300, he says:

"The situs of intangibles is in truth a legal fiction, but there are times when justice or convenience requires that a legal situs be ascribed to them. The locality selected is for some purposes, the domicile of the creditor; for others, the domicile or place of business of the debtor, the place, that is to say, where the obligation was created or was meant to be discharged; for others, any place where the debtor can be found. * * * At the root of the selection is generally a common sense appraisal of the requirements of justice and convenience in particular conditions."

The defendant in that case was a British corporation which had a branch office in New York, but the cause of action that was in favor of a Russian insurance company which had been dismembered by the Russian Soviet Republic had no relation to the business transacted in this state, nor was collection of the claim understood to be necessary for the payment of domestic creditors. It was accordingly held that the action was localized in England and

should not be entertained by the New York courts. We think the New York decisions are to the effect that a debt owing from a foreign corporation to another foreign corporation is subject to attachment provided the indebtedness arose in connection with business done in that state or is made payable there, but not otherwise.

It is true that in many jurisdictions a debt may be garnished irrespective of whether the cause of action to collect it was between nonresident corporations and whether it arose or was payable within the jurisdiction if service may be had upon the debtor. In Harris v. Balk, 198 U. S. 215, 25 S.Ct. 625, 626, 49 L.Ed. 1023, 3 Ann.Cas. 1084, the attachment debtor Harris, while temporarily in Maryland, was served with a writ of attachment by the attachment creditor Epstein. The debt sought to be attached was owing from Harris to Balk, who, like Harris, did not reside in Maryland. Under the Maryland statutes the garnishment was valid. It was accordingly sustained by the Supreme Court under the "full faith and credit" clause of the Constitution (article 4, § 1). In Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206, 91 A.L.R. 950, Baltimore & Ohio R. Co. v. Hostetter, 240 U.S. 620, 36 S.Ct. 475, 60 L.Ed. 829, and Louisville & Nashville R. Co. v. Deer, 200 U.S. 176, 26 S.Ct. 207, 50 L.Ed. 426, the full faith and credit clause was likewise the point involved. In Harris v. Balk, supra, Justice Peckham denied that the obligation to pay the debt could only be enforced at the place where it was created, and stated that: "The obligation of the debtor to pay his debt clings to and accompanies him wherever he goes." Such is the law in many of our states and such was the law of Maryland relating to garnishee process. That law the Supreme Court said must be recognized elsewhere because of the "full faith and credit" clause of the Constitution, but it was not prescribing a rule for states where the effect of a garnishment would have been otherwise. The attachment in the case at bar was a remedy given by statute, and the attachability of a debt owing by Westinghouse Company to the Russian Company depended on the New York statutes as construed by the courts of that state. Loewe v. Savings Bank of Danbury, 236 F. 444, L.R.A. 1917B, 938 (C.C.A.2);

Ackerman v. Tobin, 22 F.(2d) 541 (C.C.A. 8); Miller v. Smith, 1 F.(2d) 292, 293 (C. C.A.8). See, also, Sanders v. Armour Fertilizer Works, 292 U.S. 190, 208, 54 S.Ct. 677, 78 L.Ed. 1206, 91 A.L.R. 950; Restatement, Conflict of Laws, § 108. The decisions of the New York courts, in our opinion, require us to hold the attachment valid if the indebtedness of Westinghouse Company to the Russian Company arose or was payable in the state of New York. The pleadings do not disclose where it arose or where it was payable, but regularity is presumptively imputed to the proceedings in the state court, and the burden of establishing that a New York situs ought not to be attributed to the indebtedness is one that the defendant must bear. Harvey v. Tyler, 2 Wall. 328, 341, 345, 17 L.Ed. 871; Galpin v. Page, 18 Wall. 350, 371, 21 L.Ed. 959. As matters stand, the attachment is presumptively valid, and the motion to dismiss the complaint should not have been granted without proof showing lack of jurisdiction of the state court to levy the attachment.

But the plaintiff says that, irrespective of any of the foregoing considerations, the amended complaint should not have been dismissed, because Judge Knox and Judge Caffey had granted motions by the plaintiff to strike out defenses in the answer, thus impliedly recognizing the complaint as good on its face. The difficulty with this argument is that in neither motion was the validity of the attachment involved or discussed. Furthermore, the orders of Judge Knox and Judge Caffey were only interlocutory, and consequently would not bind this court upon an appeal from the judgment dismissing the amended complaint.

The further contention that Westinghouse Company is bound by the judgment of the state court in the original action, because it might have intervened and attacked the attachment, is without merit. It was not bound to do this at the expense of waiving its rights to question the jurisdiction. Ordinarily, the question of the validity of such an attachment is first raised in the suit in aid of it. Indeed, that practice, rather than intervention by the garnishee in the original action, was held in Simpson v. Jersey City Contracting Co., 47 App.Div. 17, 61 N.Y.S. 1033, to be preferable, and was sanctioned in Ross v. Ingersoll, 53 App.Div. 86, 65 N.Y.

S. 753, and Mechanics & Metals Nat. Bank v. Banque Industrielle de Chine, 205 App. Div. 543, 199 N.Y.S. 817.

It is argued that the change in the New York statute in 1913 (section 225 (4) of the General Corporation Law [Consol. Laws N.Y. c. 23]), which made it possible for a nonresident or a foreign corporation to sue a foreign corporation doing business within the state, even though the cause of action did not arise therein, extended the right to attach claims against foreign corporations to all cases where those corporations were actually doing business within the state. But, while the statute as amended by Laws 1913, c. 60, by the addition of subdivision (4) to section 1780 of the old New York Code of Civil Procedure enabled the state courts to take jurisdiction of actions between two foreign corporations, wherever the defendant was doing business within the state, it did not require them to assume jurisdiction merely because the defendant was engaged in business within the state if the cause of action did not arise there. Severnoe Securities Corporation v. London & Lancashire Ins. Co., 255 N.Y. 120, 174 N.E. 299. In his treatise on Conflict of Laws, Vol. 1, § 108.4, Professor Beale pointed out objections to treating the debt of a foreign corporation which had not arisen in New York as subject to attachment therein at the suit of a nonresident and to making the ability to reach the debtor under our laws the only test of the right to attach the claim. On the other hand, the Restatement, Conflict of Laws, § 108, sets forth the broader, and unquestionably the prevalent, rule as that approved by the Supreme Court in Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023, 3 Ann.Cas. 1084. But we are bound to apply the New York attachment statute as construed by its courts. As so construed, an indebtedness by one foreign corporation doing business here to another foreign corporation is only subject to attachment if it arose or was payable within the state. Professor Walter B. Kennedy, in a discussion of "Garnishment of Intangible Debts in New York," volume 35, Yale Law Journal, 689, disapproves the limitations by the New York courts of the rule applied in Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L. Ed. 1023, 3 Ann.Cas. 1084, but seems to recognize (at page 703) that under the New York authorities claims of foreign corporations against foreign corporations may only be attached when the causes of action have arisen within the State. Mechanics & Metals Nat. Bank v. Banque Industrielle de Chine, 205 App.Div. 543, 199 N.Y.S. 817; Flynn v. White, 122 App. Div. 780, 107 N.Y.S. 860; Lancaster v. Spotswood, 41 Misc. 19, 83 N.Y.S. 572, affirmed 86 App.Div. 627, 83 N.Y.S. 1109; and India Rubber Co. v. Katz, 65 App. Div. 349, 72 N.Y.S. 658.

For the foregoing reasons, the order dismissing the amended complaint should be reversed, without prejudice, however, to the right of the defendant, either upon the trial or by a further motion for summary judgment to establish that the debt sought to be attached did not arise in New York and was not made payable there. If it shall be established that the indebtedness did not there arise and was not there made payable, the District Court should dismiss the amended complaint.

Judgment reversed.