NATIONAL BROADWAY BANK et al., Appellants, *v.* OSCAR H. SAMPSON et al., Respondents, and CENTRAL NATIONAL BANK OF THE CITY OF NEW YORK, Appellant.

ATTACHMENT — DEBT HAVING A FOREIGN SITUS NOT ATTACHABLE.
A debt due from a limited partnership to a corporation, both organized under the laws of another state, having a foreign situs, is not attachable in this state; and the personal service of a warrant of attachment upon a non-resident member of the partnership while temporarily within this

state confers no jurisdiction of the debt owing by him to the corporation or his liability therefor as such member; nor does the personal service of a warrant upon a member of the partnership residing in this state confer jurisdiction so as to render the non-resident partner liable therefor, since the debt or liability owing or incurred by the resident partner is the only liability attached.

*Nat. Broadway Bank* v. *Sampson,* 85 App. Div. 320, affirmed.

(Argued June 13, 1904; decided August 5, 1904.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 25, 1903, sustaining defendant Sampson's exceptions ordered to be heard in the first instance at the Appellate Division and granting a new trial.

The action was brought by the sheriff of the city and county of New York and the National Broadway Bank, an alleged attachment creditor, under section 677 of the Code of Civil Procedure, to recover an indebtedness of the firm of O. H. Sampson & Co. to the Bennett Manufacturing Corporation. It was claimed that the debt was attached on April 20, 1897. The defendant, the Central National Bank, also claimed to have levied an attachment upon the same indebtedness, but having refused to join as plaintiff with the National Broadway Bank, it was made a defendant upon the allegation that it had levied an attachment upon the same indebtedness. Of the defendants composing the firm of O. H. Sampson & Co., only Eugene H. Sampson and Charles H. Sampson were served, or appeared and answered. The defendants Sampson answered the complaint, and, among other things, denied that the indebtedness claimed to have been attached had any situs in the state of New York; was subject to attachment therein, or had been levied upon in favor of either of the banks. The Central National Bank also answered, alleging that it had levied an attachment upon said indebtedness on April 19, 1897, and demanded affirmative judgment in its favor against its codefendants. Eugene H. Sampson died before the trial, and the action was not revived against his representatives, so that the action came to trial as an action against the defendant Charles E.

Sampson alone, and resulted in a verdict directed by the court against him and in favor of the sheriff for the benefit of the National Broadway Bank for the sum of $4,160.70, and for the benefit of the Central National Bank in the sum of $5,745.38. The defendant Charles E. Sampson excepted to the direction of a verdict which was heard in the first instance by the Appellate Division, where the exception was sustained and a new trial ordered. The plaintiff and the defendant banks then appealed to this court, giving a stipulation for judgment absolute in case the order be affirmed.

The Bennett Manufacturing Corporation, the defendant in the attachment suits brought by the banks, was a corporation organized under the laws of Massachusetts, and prior to April 15, 1897, was engaged in the manufacture of yarn at its mills in New Bedford in that state. The firm of O. H. Sampson & Co. was a limited partnership, organized under the laws of Massachusetts, and consisted of four general partners, Oscar H. Sampson and Charles E. Sampson, who resided in Boston; Joseph Sargent, who resided in Worcester; Eugene H. Sampson, who resided in the city of New York, and of William A. Slater, the special partner, who resided in Norwich, Connecticut. The firm was organized October 31, 1891, for a term expiring December 31, 1893. It was twice renewed and finally expired by limitation on April 15, 1897. The firm's principal place of business was in Boston. Prior to its dissolution it had, however, maintained a branch office in New York, where it had seven or eight salesmen, six or seven entry clerks, a stenographer and one or two office boys, but no bookkeeper other than the entry clerks, and no books were kept in New York except the order books. These salesmen procured orders which were recorded in the entry books in New York and reported to the Boston office. On April 15, 1897, the firm went into liquidation and the New York office was given up at that time. Eugene H. Sampson, the only member of the firm residing in New York, then went into business with another firm, and on and after the date of dissolution, which was

several days before the attachments in question, the firm had
neither an office nor any property in the state. The firm had
previously been the general selling agent of the Bennett
Manufacturing Corporation as well as of the products of
other mills. The sales were guaranteed by the firm and
remittances upon account were made from time to time as
might be requested by the corporation without reference
to the dates when the accounts became due or to the time
when collections were made by the firm. The dealings
between the firm and the corporation were had in Massachu-
setts. There the firm kept its books of account and records
of its transactions, including those of the Bennett Manufac-
turing Corporation. The Bennett corporation consigned its
goods to the firm at Boston exclusively, and payments for the
goods sold by the firm for the account of the company were
made to the firm in Boston. Statements of account were ren-
dered by the firm at the same place. Goods were shipped
generally from the mills at New Bedford directly to the pur-
chaser. They were billed by Sampson & Co. from the Boston
office, and remittances to the Bennett corporation were made
from that office. On April 15, 1897, the Superior Court of
Massachusetts, on a bill filed by the stockholders alleging the
insolvency of the Bennett corporation, entered a decree
appointing receivers of the property of that company, and
enjoined it, its servants and agents from making any sale,
transfer, incumbrance or disposal of any of the estate, choses
in action, property or effects, real or personal, of said corpo-
ration, whether consisting of real estate or choses in action, or
any other personal property, or from making any disposal of
any books of account, papers, documents, vouchers or evi-
dences of title of said corporation. A copy of this decree and
injunction was served upon O. H. Sampson & Co. at Boston,
April 17, 1897. On the nineteenth of the same month the
Central National Bank brought suit in New York against the
Bennett Manufacturing Corporation for ten thousand dollars,
and obtained a warrant of attachment. On the same day a
deputy sheriff delivered copies of the warrant to the defend-

ants Charles E. Sampson and Eugene H. Sampson, with a general notice.   On the next day the plaintiff bank obtained an attachment against the Bennett Manufacturing Corporation, and on that day a deputy sheriff served upon Eugene H. Sampson two copies of the warrant, which also contained a general notice as to the property attached, but no copy of the warrant was served upon the defendant Charles E. Sampson. O. H. Sampson & Co. thereupon gave to the sheriff certificates in each case, certifying as to certain tangible property belonging to the Bennett corporation within this state, and also further certified their indebtedness to the Bennett Company; set forth the appointment of receivers of that corporation in Boston on the fifteenth, the service of the injunction order upon them April seventeenth, that such moneys as they had received upon sales made for the Bennett corporation had been received at Boston, and that they did not admit that the same were within the state or that a levy had been made thereon under the attachment.   The entire indebtedness of O. H. Sampson & Co. to the Bennett corporation was subsequently liquidated by payments thereof to the Massachusetts receivers. There was no individual indebtedness on the part of either Eugene H. Sampson or Charles E. Sampson to the Bennett corporation as distinguished from the debt of the firm.   The Bennett corporation was not served personally in either of the attachment suits, but was served by publication and did not appear.

*Edward Bruce Hill* for plaintiffs, appellants.   Levy upon the debt due the Bennett Manufacturing Company from O. H. Sampson & Co. by service upon the resident partner of that firm was valid. (Code Civ. Pro. § 649, subd. 3; *Plimpton* v. *Bigelow*, 93 N. Y. 592; *Douglass* v. *Ph. Ins. Co.*, 138 N. Y. 209; *Yerkes* v. *McFadden*, 141 N. Y. 136; *Parker* v. *Danforth*, 16 Mass. 299; *Atkins* v. *Prescott*, 10 N. H. 120; *Menagh* v. *Whitwell*, 52 N. Y. 146.)   The notice served with the warrant was sufficient. (*O'Brien* v. *Bank*, 56 N. Y. 52; *Courtney* v. *E. W. Bank*, 154 N. Y. 688; *Rob-*

*inson* v. *C. S. Co.*, 31 App. Div. 238 ; *Hayden* v. *Nat. Bank*, 130 N. Y. 146 ; *Greentree* v. *Rosenstock*, 61 N. Y. 583.) No defense based upon any alleged appointment of receivers for the Bennett Manufacturing Company in Massachusetts is available to defendants or valid. (*Brazill* v. *Isham*, 12 N. Y. 9 ; *Willitts* v. *Waite*, 25 N. Y. 577 ; *Hibernia Bank* v. *Lacombe*, 84 N. Y. 367 ; *Taylor* v. *C. Ins. Co.*, 96 Mass. 353 ; *Heidritter* v. *E. O. Co.*, 112 U. S. 294.)

*George A. Strong* for defendant, appellant. The reversal cannot be sustained upon the ground on which it was placed by the Appellate Division. (*Brazill* v. *Isham*, 12 N. Y. 9 ; *Wright* v. *Delafield*, 25 N. Y. 266 ; *Paige* v. *Willet*, 38 N. Y. 28 ; *Burnside* v. *Matthews*, 54 N. Y. 78 ; *K. Co.* v. *Kennedy*, 165 N. Y. 353 ; *Clark* v. *Post*, 113 N. Y. 17 ; *Hamilton* v. *N. Y. C. R. R. Co.*, 51 N. Y. 106 ; *Peck* v. *Keller*, 76 N. Y. 605.) Upon the whole record the Central National Bank was entitled to the direction of a verdict in its favor. (*O'Brien* v. *M.*, etc., *Co.*, 56 N. Y. 52 ; *Carr* v. *Corcoran*, 44 App. Div. 97 ; *Douglass* v. *Ph. Ins. Co.*, 138 N. Y. 209.) All the equities of this controversy are with the bank. (*C. N. Bank* v. *B.*, etc., *Co.*, 21 App. Div. 635 ; *Robinson* v. *C.*, etc., *Co.*, 23 App. Div. 499.)

*Charles E. Hughes* and *Arthur C. Rounds* for respondent. The indebtedness of the firm of O. H. Sampson & Company or the liability of the defendant Charles E. Sampson therefor to the Bennett Manufacturing Corporation did not have its situs within the state of New York, and service of copies of the warrants of attachment upon Eugene H. Sampson did not constitute a levy upon the indebtedness as against the non-resident partners or afford a basis for a recovery against the defendant Charles E. Sampson in this action. (*Douglass* v. *Ph. Ins. Co.*, 138 N. Y. 209 ; *Ward* v. *Boyce*, 152 N. Y. 191 ; *Williams* v. *Ingersoll*, 89 N. Y. 508 ; *Chicago*, etc., *Ry. Co.* v. *Sturm*, 174 U. S. 710 ; *C. Nat. Bank* v. *Thurber*, 74 Hun, 632 ; *D'Arcy* v. *Ketchum*, 11 How. (U. S.) 165 ; *Oakley* v.

*Aspinwall*, 4 N. Y. 513 ; *Hoffman* v. *Wight*, 1 App. Div. 514 ; *Pennoyer* v. *Neff*, 95 U. S. 714 ; *Parker* v. *Danforth*, 16 Mass. 299 ; *Jewett* v. *Bacon*, 6 Mass. 60 ; *Kidder* v. *Packard*, 13 Mass. 80.) The liability of the defendant Charles E. Sampson, a non-resident, to the Bennett Company, a foreign corporation, not being within the state, the court had no jurisdiction to attach it at the suit of the Central National Bank, and the service upon him of a copy of its warrant of attachment was ineffectual for any purpose. (*Carr* v. *Corcoran*, 44 App. Div. 96 ; *Balk* v. *Harris*, 124 N. C. 461 ; *Green* v. *Farmers' Bank*, 25 Conn. 451 ; *Lovejoy* v. *Allen*, 33 Maine, 414 ; *Jones* v. *Winchester*, 6 N. H. 497 ; *Tingley* v. *Bateman*, 10 Mass. 343 ; *Nye* v. *Liscombe*, 21 Pick. 263.) The indebtedness in question had its situs in Massachusetts and having been impounded by the Massachusetts court before the alleged levies was not subject to attachment here. (*Merrill* v. *C. M. F. Ins. Co.*, 171 Mass. 81 ; 166 Mass. 238 ; *Matter of C. J. Co.*, 128 N. Y. 550 ; *Osgood* v. *Maguire*, 61 N. Y. 524 ; *Rutter* v. *Tallis*, 5 Sandf. 610 ; *Steele* v. *Sturges*, 5 Abb. Pr. 442 ; *Mosher* v. *Supreme Sitting of Iron Hall*, 88 Hun, 394 ; *Heidritter* v. *E. O. C. Co.*, 112 U. S. 294 ; *Matter of S. S. T. B. Co.*, 136 N. Y. 169 ; *The Willamette Valley*, 66 Fed. Rep. 565 ; *C., etc., Ry. Co.* v. *K., etc., Co.*, 108 Ill. 317.) The notice accompanying the warrants of attachment was insufficient. (*Courtney* v. *E. W. Bank*, 154 N. Y. 688 ; *Robinson* v. *U. S. Co.*, 31 App. Div. 238 ; *Hayden* v. *Nat. Bank*, 130 N. Y. 146.)

MARTIN, J. This action was brought in aid of an attachment issued against the property of the Bennett Manufacturing Corporation, which was organized under the laws of and whose principal place of business was in the state of Massachusetts. It was based upon the provisions of the Code of Procedure relating to attachments and to actions to recover attached demands, and was instituted in pursuance of leave by the Supreme Court granted under the provisions of section 677. The summons in the present action was personally

served in this state upon the defendants Eugene H. Sampson,
Charles E. Sampson and the defendant bank, so that the court
obviously acquired jurisdiction herein of the persons of such
defendants. The defendant bank was made a party defend-
ant in this action on the ground that it was an attachment
creditor and refused to join as plaintiff. The defendants
Eugene H. and Charles E. Sampson were made parties defend-
ant on the theory that they or the firm of which they were
general partners were indebted to the Bennett corporation,
and that such debt had been properly attached under and by
virtue of attachments which were issued in actions brought
by the plaintiff and defendant banks against the Bennett
Manufacturing Corporation. Thus, although there is no ques-
tion as to the court's jurisdiction in this action of the person
of the defendant Charles E. Sampson, against whom alone the
judgment was directed by the trial court, yet, a more serious
question is whether, when this action was tried, there existed
any valid lien upon or attachment of the debt which the firm
of O. H. Sampson & Co. formerly owed to the Bennett
corporation.

The grounds upon which the respondent seeks to uphold
the decision of the learned Appellate Division which reversed
the judgment against the defendant Charles E. Sampson, and
which are controverted by the appellants, are: 1. That the
indebtedness of the firm of O. H. Sampson & Co., or the
liability of the defendant Charles E. Sampson therefor to the
Bennett Manufacturing Corporation had no situs within the
state of New York, and that the service of copies of the war-
rants of attachment upon Eugene H. Sampson did not consti-
tute a levy upon the indebtedness of the firm as against the
non-resident partners, nor afford a basis for a recovery in this
action against the defendant Charles E. Sampson; 2. That
the liability of the non-resident defendant Charles E. Sampson
to the Bennett Manufacturing Company, a foreign corpora-
tion, not being within the state, the court had no jurisdiction
to attach it at the suit of the Central National Bank, and that
the service upon him of a copy of its warrant of attachment

was ineffectual for that purpose; 3. That the indebtedness of the firm of O. H. Sampson & Co. to the Bennett Manufacturing Corporation had its situs in the state of Massachusetts, and having been impounded by a court of that state before the alleged levies, was not subject to attachment here; and 4. That the notice accompanying the warrants of attachment was insufficient.

We shall discuss only the first two of these propositions, as with our views they are decisive of the case, thus rendering a consideration of the questions of the effect of the appointment of receivers of the Bennett corporation in the state of Massachusetts, and of the sufficiency of the notices accompanying the warrants of attachment, wholly unnecessary.

In discussing these propositions it should be borne in mind that no question is involved as to the jurisdiction of the court of the person of the defendant Charles E. Sampson in the case at bar. Conceding, as claimed by the appellants, that each partner owed all the debts of the firm, and that the service of a copy of the warrants of attachment upon Eugene H. Sampson, one of the partners residing in this state, effected a legal attachment upon the debt owing by him as such partner to the Bennett corporation, the question is whether such attachment rendered the defendant Charles E. Sampson liable therefor in this action, and also whether such liability was effected by the service of such warrant upon him when he was a non-resident and only temporarily within the state. Thus, the first inquiry is : Did the service of the warrants of attachment upon Eugene H. Sampson, one of the partners, constitute a levy upon or attachment of the indebtedness owing by that firm so as to bind his copartner, who was a non-resident, and thus make him personally liable therefor ? To charge Charles E. Sampson.by virtue of such service involves the conclusion that the attachment not only created a lien upon the indebtedness of Eugene H. Sampson as a member of the firm, but also created a liability therefor against each of the non-resident members of that firm as well. We think no such liability as against the defendant Charles E. Sampson

or the other non-resident members of the firm resulted from such service of the attachment.

Although it be admitted that the debt owing the Bennett corporation by Eugene H. Sampson, a resident of this state, had its situs here and was subject to attachment, yet the fact that the debt of Eugene was attached cannot be held to have operated as an attachment of the debt of Charles or to have in any way made him liable therefor in this action.

Attachment suits are in the nature of actions *in rem*, and are especially so when they proceed without jurisdiction of the person of the debtor in the attachment suit. No state can subject to its laws either real or personal property which is out of its jurisdiction. It is fundamental that in an attachment proceeding the *res* must be within the jurisdiction of the court issuing the process in order to confer jurisdiction. (*Plimpton* v. *Bigelow*, 93 N. Y. 592, 596.) In discussing the question involved in that case Judge ANDREWS said : " In the case of tangible property, capable of actual manucaption, it must have an actual situs within the jurisdiction. But credits, choses in action and other intangible interests are made by statute susceptible of seizure by attachment. The same principle, however, applies in this case as in the other, the *res*, that is the intangible right or interest, to be subject to the attachment must be within the jurisdiction. * * * Where the defendant, who owns a credit, is within the jurisdiction, there is no difficulty through proceedings *in personam* in reaching and applying it in discharge of his debt to the plaintiff. But where he is out of the jurisdiction, and the debt or duty owing to him, or the right he possesses exists against some person within the jurisdiction, attachment laws fasten upon that circumstance, and by notice to the debtor or person owing the duty or representing the right, impound the debt, duty or right, to answer the obligation which the attachment proceeding is instituted to enforce. In the case supposed the debt, duty or right, for the purpose of attachment proceedings is deemed to have its situs or locality in the juris-

diction." But where neither the debtor nor the creditor resides in the state the rule is otherwise. Thus, in that case, which related to the stock of a corporation, it was said : " It seems impossible to regard the stock of a corporation as being present for the purpose of judicial proceedings, except at one of two places, viz., the place of residence of the owner, or the place of the residence of the corporation. * * * We are, therefore, of the opinion, that the fundamental condition of attachment proceedings, that the *res* must be within the jurisdiction of the court in order to an effectual seizure, is not answered in respect to shares in a foreign corporation by the presence here of its officers, or by the fact that the corporation has property and is transacting business here."

In *Douglass* v. *Phenix Ins. Co.* (138 N. Y. 209, 219) the same judge said : " But it is a fundamental rule that in attachment proceedings the *res* must be within the jurisdiction of the court issuing the process, in order to confer jurisdiction. (*Plimpton* v. *Bigelow*, 93 N. Y. 593.) In the case of movables their seizure under the attachment shows that their actual situs is within the jurisdiction. But in respect to intangible interests, debts, choses in action, bonds, notes, accounts, interests in corporate stocks and things of a similar nature, the question whether the *res* is within the jurisdiction of the sovereignty, where the process is issued, is not so readily determined. The general rule is well settled that the situs of debts and obligations is at the domicile of the creditor. But the attachment laws of our own and of other states recognize the right of a creditor of a non-resident to attach a debt or credit owing or due to him by a person within the jurisdiction where the attachment issues, and to this extent the principle has been sanctioned that the laws of a state, for the purposes of attachment proceedings, may fix the situs of a debt at the domicile of the debtor. (*Embree* v. *Hanna*, 5 Johns. 101 ; *Williams* v. *Ingersoll*, 89 N. Y. 508, 526.) * * * If the laws of Massachusetts go to the extent claimed, and assume to authorize attachment proceedings to seize a credit owing to a resident of this state, when neither

the debtor nor creditor are within the jurisdiction, this state is not, we think, bound to recognize them."

That case was followed by the Appellate Division in *Carr* v. *Corcoran* (44 App. Div. 97, 99) where it was expressly held that an attachment of a debt could only be effected as against the creditor by service upon the debtor when he was domiciled within the state; that in such case the *res* of the debt was at the domicile of the debtor, and that the court could not obtain jurisdiction by service upon a non-resident debtor who at the time was temporarily sojourning here. "The debtor being a non-resident and the creditor being a non-resident, there would be nothing for the court to take hold of."

.The principle applicable to the question of jurisdiction of the person and of the *res* is briefly stated by Judge O'BRIEN in *Ward* v. *Boyce* (152 N. Y. 191, 196) as follows: "If the proceedings involve the determination of the personal liability of the defendant, he must be brought within the jurisdiction by service of process within the state, or voluntary appearance. If it be a proceeding *in rem* the *res* must have been seized or attached, or at least must be within the jurisdiction." This was cited with approval by this court in *Bank of China* v. *Morse* (168 N. Y. 458, 481).

In this case the court issuing the attachments never acquired jurisdiction of the Bennett corporation, the creditor, and, hence, if it obtained any, it must be upon the ground that the debt to that company had an actual situs in this state. If Charles E. Sampson had been a resident of the state, then, within the principle which obtains under the attachment laws, the debt owing by him to the Bennett corporation might have been attached and it would be valid. But that was not the situation. Charles E. Sampson was a non-resident of this state, and his liability as a member of the firm of O. H. Sampson & Co. to the Bennett corporation existed or had its situs only at his place of residence. While it is true that he still owed the debt when temporarily within this state, yet, as it was contracted in Massachusetts, was owing by him, a resident of that state, and as the creditor was also a resident

there, it is quite impossible to see how the debt had any situs in this state even under the rule relating to attachments. If his debt had an actual situs, it certainly was not migratory, and, therefore, as to him, it might not be attached in any state or jurisdiction where he might sojourn temporarily or in which one of his partners might reside. It seems clear that a debt, to be subject to attachment, must have a situs somewhere and can be impounded only in the jurisdiction where such situs exists, which is clearly where either the creditor or debtor resides. The laws relating to attachments do not authorize a proceeding in this state to seize a credit owing to a resident of another state, where neither the creditor nor the debtor is a resident here. Nor, as we have seen, could the state make a debtor a resident by so declaring, when such was not the fact. If, under the circumstances of this case, it could be properly said that the situs of the debt owing by Charles E. Sampson was in this state and that it could be attached here, it would follow that it had no actual situs anywhere, but was transient, following the person of the debtor and could be attached in any state or country where the debtor might be temporarily found. Such a principle would give rise to most embarrassing conflicts of jurisdiction, would lead to great confusion and uncertainty, and greatly prejudice the rights of creditors. It is doubtless true that if the attachment suit of the defendant bank had been an ordinary action by which the bank had sought a recovery against the defendant Charles E. Sampson upon some personal liability, the service in this state would have been sufficient to confer jurisdiction. But that was not the character or purpose of that suit, as he was in no way indebted to the plaintiff in that action. Its purpose was to attach the debt owing to the Bennett corporation, which was clearly a proceding *in rem*, and, hence, the *res* must have been within the jurisdiction of the court to render it effective. The only jurisdiction acquired by personal service upon Charles E. Sampson was jurisdiction of his person. But that gave the court no jurisdiction as to the debt, the situs of which was within the state of Massachusetts.

15

Under the principle of the authorities bearing upon this question, we are of the opinion that by the service of the attachment upon Eugene H. Sampson the court acquired jurisdiction of the debt or liability of the firm of O. H. Sampson & Co., only so far as he was personally liable therefor as a member of that firm. In other words, the debt or liability owing or incurred by him as such partner was the only liability attached, and such service did not give jurisdiction over the debt so as to render Charles E. Sampson liable therefor. Hence, the court had no jurisdiction to attach such debt as against the latter and make him liable therefor. Therefore, it follows that the plaintiff bank was not entitled to recover against the defendant Charles E. Sampson, and the judgment awarded against him was properly reversed.

Under the principles of the cases cited we are also of the opinion that in the case of the Central National Bank the court in which the attachment suit was instituted acquired no jurisdiction of the debt owing by Charles E. Sampson to the Bennett corporation or his liability therefor as a member of the firm of Sampson & Co. by service upon him in this state, as the situs of that debt or liability was not here but in the state of Massachusetts where he resided, and, consequently, as against him, it could not be attached here so as to render him liable therefor. If these conclusions are correct it follows that the judgment directed by the trial court was properly reversed and the order of reversal should be affirmed. The order should be affirmed and judgment absolute granted in favor of the defendant Charles E. Sampson against the appellants upon their stipulation, with costs to him in all the courts.

PARKER, Ch. J., GRAY, BARTLETT, VANN, CULLEN and WERNER, JJ., concur.

Order affirmed, etc.